UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19CR198 SNLJ(SPM) |
| | ) |
| JIMMIE C. PAMPKIN (2) | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION AND**
**MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C. §636(b). Currently before the Court is Defendant Jimmie C. Pampkin's motion to suppress evidence and statements. (Doc. 96). Pampkin seeks to suppress multiple pills, ammunition, and other evidence seized from his pants pocket and a satchel he was wearing at the time of his arrest on March 2, 2019. Pampkin contends his warrantless arrest was not supported by probable cause and, as such, was unconstitutional. Pampkin further contends the subsequent search of his person following that arrest was also unsupported by probable cause and offensive to the constitution. After carefully considering the parties' written submissions and the evidence presented at the hearing, for the reasons set out below, I recommend that Pampkin's motion to suppress be denied.

## PROCEDURAL BACKGROUND

Defendant Jimmie C. Pampkin is charged in a Superseding Indictment with intent to distribute fentanyl (Count 1), possession of one or more firearms in furtherance of a drug trafficking crime (Count 2), and felon in possession of a firearm (Count 3).[1] Pampkin was arraigned on the original indictment on April 3, 2019, and requested time, through June 3, 2019, to file pretrial motions.  After requesting additional extensions, Pampkin filed a *pro se* motion requesting the appointment of substitute counsel. After a hearing on Pampkin's *pro se* motion, substitute counsel was appointed on September 13, 2019. At the request of substitute appointed counsel and, to satisfy the ends of justice, the undersigned extended the deadline for pretrial motions to December 30, 2019. On December 30, 2019, defense counsel filed a motion to suppress evidence and statements. (Doc. 96).  The United States filed its response on January 13, 2020.  (Doc. 97).

On January 22, 2020, a grand jury returned a superseding indictment against Pampkin, adding two new firearms-related charges. Pampkin appeared with counsel for his arraignment on January 31, 2020.  At the arraignment, Assistant United States Attorney Jeannette Graviss announced that the government had previously disclosed all relevant information related to the new charges to defense counsel and no additional disclosures would be forthcoming.  Defense counsel acknowledged receipt of the disclosures and made

---

[1] In the original indictment, Pampkin was charged only with possession with intent to distribute fentanyl. *See* Doc. 1.  Pampkin's co-defendants, Demarcus Chappel and Terran Van, were each charged with firearm offenses in addition to a similar fentanyl trafficking charge.  Chappel and Van each entered guilty pleas before the superseding indictment was returned.

an oral motion to adopt the previously filed motion to suppress. The United States made an oral motion to adopt its previously filed response to the motion.

On February 12, 2020, the undersigned held an evidentiary hearing on Pampkin's motion to suppress. At the hearing, defense counsel conceded that the motion to suppress Pampkin's statements was moot in light of the United States' response indicating that the United States did not intend to introduce those statements at trial. As such, this Report and Recommendation does not evaluate the constitutionality of Pampkin's statements but will recommend that the motion to suppress statements be denied, as moot, based on the United States' written response to the motion and the parties' statements made on the record at the evidentiary hearing.

The United States presented documentary and testimonial evidence in opposition to Pampkin's suppression motion. At the close of the hearing, defense counsel requested that a transcript be prepared and made an oral motion for time to file a post-hearing brief after the transcript was filed. The United States requested and was granted time to file any response to defendant's post-hearing brief. A transcript of the evidentiary hearing was filed on March 19, 2020 (Doc. 121), and after being granting multiple requests for time to file a post-hearing brief, defendant filed a post-hearing brief on May 1, 2020. (Doc. 131). On May 7, 2020, the United States filed a notice indicating that it did not intend to file a post-hearing brief. As such, the motion is ready for a ruling.

## A. FACTUAL FINDINGS

During the early morning hours of March 2, 2019, Pampkin was a passenger in a blue Dodge Challenger, with license plate number KR9Z1R. The Challenger was listed on what is colloquially referred to within the St. Louis Metropolitan Police Department ("SLMPD") as a "hot sheet." The Challenger was listed on the "hot sheet" for having excessively tinted windows and felony fleeing on February 26, 2019. Detective Brett Carlson ("Det. Carlson"), who was assigned to the SLMPD's Anti-Crime Unit[2] at the time, first observed the Challenger near the intersection of 20th and Locust during the early morning hours of March 2, 2019. The bright blue color of the Challenger drew Det. Carlson's attention. When he matched the license plate on the Challenger to the Challenger listed on the "hot sheet," Det. Carlson contacted a detective in the Real Time Crime Center at police headquarters and asked him to verify that the Challenger was still "wanted." Upon receiving verification that the Challenger was still "wanted," Det. Carlson began to follow it in his unmarked police car. Although Det. Carlson began to follow the Challenger, he did not initially put on his lights or sirens or otherwise make any attempt to stop the car because it was traveling through a densely populated part of town.

The Challenger started to pick up speed and drive erratically when it reached the vicinity of Laclede's Landing and Highway 70. Once the Challenger entered Highway 70, Det. Carlson observed that the driver turned off the headlights, drove at a high rate of speed,

---

[2] Detective Carlson testified that the Anti-Crime Unit is tasked with attempting to locate stolen vehicles, carjacked vehicles, cars wanted for felony fleeing, homicides, etc. Essentially, the unit searches for any vehicle involved in a crime.

4

and dangerously passed other cars on the highway by using the far-right lane that would typically be used by emergency vehicles or stranded motorists. At one point, the Challenger sped past Det. Carlson's car and almost sideswiped the passenger side of his car. Det. Carlson was able to keep abreast of the Challenger's movements with the help of an air support unit that began monitoring the Challenger at some point. Because officers on the ground were having trouble safely staying with the Challenger, a supervising officer authorized the use of spike strips to deflate the Challenger's tires and slow or stop the car. In overhearing the actions of other officers facilitating with the stop over his police radio, Det. Carlson was able to keep abreast of the Challenger's whereabouts on Highway 70. It was only after Det. Carlson understood that spike strips had been unsuccessfully deployed that he (along with officers in a separate unmarked police car) turned on their lights and attempted to curb the Challenger.

The Challenger eventually exited Highway 70 at Adelaide and came to a stop about halfway up the exit ramp. Det. Carlson observed two men, later identified as Demarcus Chappel and Terrance Vann, jump out of the Challenger and begin running up the ramp away from the Challenger and the police cars. Det. Carlson observed both men with firearms in their hands when they exited the Challenger. Det. Carlson also observed Pampkin exit the Challenger on the driver's side, presumably from the back seat of the car. Pampkin appeared to be injured and could only hobble slowly up the ramp in the direction taken by Chappel and Vann. Det. Carlson pursued Chappel and Vann on foot, and they were eventually apprehended. Another officer, Det. Brandhorst, pursued Pampkin.

5

However, Det. Carlson observed enough to notice that Pampkin (despite appearing injured) "did make it a ways away from the car" and could see "[Det.] Brandhorst engaging him, running after him, but he closed the distance on him pretty quick." EH Tr. (Doc. 121), p. 42.

When Det. Carlson returned to the abandoned Challenger, Pampkin was already in handcuffs. Det. Carlson searched Pampkin incident to his arrest and found capsules containing fentanyl in his pocket. Det. Carlson found additional pills and ammunition in the satchel Pampkin had been wearing on his person. Det. Carlson testified that when Pampkin got out of the Challenger and attempted to run away, it was fully his intention to arrest Pampkin for resisting arrest. Det. Carlson testified that the search incident to arrest—which yielded the evidence Pampkin seeks to suppress—was pursuant to an arrest for resisting. Once at headquarters, Det. Carlson initially wrote that he was charging Pampkin with resisting arrest. However, the booking paperwork reflected that Det. Carlson crossed out the "resisting" charge and instead charged Pampkin for the more serious narcotics/suspected narcotics found on his person after his arrest.

### B. CONCLUSIONS OF LAW

The Fourth Amendment protects people against "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. ("[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"). The Supreme Court has held that, unless a recognized exception applies, the Fourth Amendment requires a warrant for searches and seizures.

*Riley v. Calif.*, 134 S. Ct. 2473, 2482 (2014) (the Fourth Amendment requires a warrant for a search or seizure absent "a specific exception to the warrant requirement"); *Missouri v. McNeely,* 569 U.S. 141, 148 (2013) (same). When conducted incident to a lawful custodial arrest, a full search of the arrestee's person for both weapons and evidence is permitted, as is a search of containers and other items found on the arrestee's person. *United States v. Robinson*, 414 U.S. 218, 224 & 235 (1973) (concluding a search incident to arrest is both an exception to the warrant requirement and reasonable for Fourth Amendment purposes); *Schaffer v. Beringer*, 842 F.3d 585, 592-93 (8th Cir. 2016). A search incident to arrest may lawfully extend to the area within the arrestee's "immediate control," that is, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel v. California*, 395 U.S. 752, 763 (1969). This exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009). Thus, this rule is applicable even when the defendant is restrained. *See, e.g., United States v. Perdoma*, 621 F.3d 745, 753 (8th Cir. 2010) (warrantless search of defendant's bag that had been in defendant's possession at the time of his arrest was constitutional search incident to arrest even though search occurred after defendant was restrained and officer had exclusive control of the bag).

  In this case, Pampkin contends the search of his person incident to arrest was unlawful because the warrantless arrest itself was unlawful. An officer may conduct a warrantless arrest without violating the Fourth Amendment if the officer has probable cause

7

to believe the arrestee has committed an offense—even a minor offense—in the officer's presence. *See Virginia v. Moore,* 553 U.S. 164, 171-76 (2008) (because misdemeanors committed in the presence of an officer can justify arrest, warrantless arrest for driving with suspended license was lawful for Fourth Amendment purposes even though state law authorized only issuance of a summons); *Ehlers v. City of Rapid City,* 846 F.3d 1002, 1008-10 (8th Cir. 2017) (warrantless arrest for obstructing justice where police had probable cause based on defendant disobeying officer's instructions and refusal to comply can constitute obstruction under state law). "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). In making this determination, "law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); *see also United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008).

In this case, Det. Carlson testified that Pampkin was initially arrested for "resisting arrest." In Missouri, "resisting arrest" is committed if the person reasonably should know

8

an officer is making an arrest or a lawful stop or detention, and the person resists the arrest, stop or detention by using or threatening the use of violence or physical force or by "fleeing from the officer." Mo. Rev. Stat. §575.150.1(1). Under Missouri law, someone driving a vehicle is presumed to be fleeing if s/he continues to drive after s/he saw or should have seen lights or heard or should have heard sirens. Mo. Rev. Stat. §575.150.3.

When the totality of the circumstances leading up to Pampkin's arrest are considered, it was not unreasonable for Det. Carlson to conclude that Pampkin was attempting to flee when he saw him hobbling up the Adelaide off-ramp. Det. Carlson's encounter with the Challenger and its occupants began when he noticed the Challenger in downtown St. Louis and confirmed that it was listed on the "hot sheet" as a vehicle "wanted" in connection with a felony fleeing. As the foregoing factual findings demonstrate, in the time leading up to Pampkin's arrest, Det. Carlson and others observed the Challenger drive recklessly on the highway and observed the Challenger commit a number of traffic violations while endangering other motorists. Then, after multiple police cars activated their police lights and sirens, Det. Carlson and other officers observed the Challenger come to an abrupt stop halfway up the Adelaide off-ramp. Det. Carlson and other officers observed two of the Challenger's occupants, including the driver, exit the car with firearms in hand and begin running up the ramp, away from police. Det. Carlson then observed Pampkin exit the car and start off—albeit at a much slower pace—up the off-ramp apparently in the same general direction as the other two occupants, and away from what must have been an obvious police presence. Det. Carlson focused his pursuit on the first two men who were visibly armed and

9

ran from the Challenger.  However, Det. Carlson was able to observe that Det. Brandhorst had to "run" to "close the distance" to get to Pampkin.

Pampkin counters that the facts and circumstances do not support a finding of probable cause to arrest him for "resisting" because it was evident to the officers that Pampkin was not driving the car, there was no evidence that Pampkin was violent or threatened the officers, and there was no evidence that Pampkin continued to try to hobble away after he "became aware" of Det. Brandhorst's presence.  *See* Post Hrng. Br. (Doc. 131), p. 8 & 10.  The suggestion that Pampkin was somehow unaware that officers were present and trying to engage the Challenger and its occupants rings hollow.  This is especially true when one considers all the circumstances that led up to Pampkin hobbling up the Adelaide off-ramp.  Based on the above factual findings, when Pampkin first exited the Challenger, police officers had reasonable suspicion to believe criminal activity was afoot and, thus, could lawfully detain Pampkin to investigate further.  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  Reasonable suspicion sufficient to briefly detain Pampkin for questioning quickly ripened into probable cause to arrest Pampkin for fleeing when Pampkin started hobbling up the ramp, away from police.

Regardless of the merits of Pampkin's counter-narrative of why he was hobbling away from the Challenger (and police) when Det. Brandhorst arrested him, the totality of the circumstances as reflected in the foregoing factual findings, are sufficient to support a finding of probable cause for Pampkin's arrest. Indeed, Eighth Circuit precedent requires that law enforcement officers be given "substantial latitude in interpreting and drawing

inferences from factual circumstances." *Henderson*, 613 F.3d at 1181.  In addition, "probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity." *Mendoza*, 421 F.3d at 667; *Jones*, 535 F.3d at 890. As such, in order to demonstrate there was probable cause for an arrest, "the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *Mendoza*, 421 F.3d at 667.

Because Pampkin's warrantless arrest was supported by probable cause, and because Pampkin does not otherwise challenge the search incident to arrest, Pampkin's motion to suppress should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Jimmie C. Pampkin's Motion to Suppress Evidence and Statements (Doc. 96) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be set before the **Honorable Stephen N. Limbaugh, Jr. at a later time**.

_/s/ Shirley Padmore Mensah_
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June, 2020.